UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JASON P. MASTERSON, )<br>)<br>*Plaintiff,*   )<br>)<br>v.   )<br>)<br>KILOLO KIJAKAZI,   )<br>Acting Commissioner of Social   )<br>Security,   )<br>)<br>*Defendant*   ) | Cause No. 3:20-CV-920-RLM-MGG |

ORDER AND OPINION

Jason Masterson seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court took the appeal under advisement following a telephonic hearing on February 14, 2022, and for the following reasons reverses the Commissioner's decision and remands for further proceedings.

I.   BACKGROUND

Mr. Masterson claims that his chronic back pain prevents him from working. He applied for Social Security Disability Insurance benefits and Supplemental Security Income on July 10, 2018, alleging that his disability began on March 22, 2018. Mr. Masterson's applications were denied initially and

on reconsideration. He attended an administrative hearing on December 16, 2019, where he and a vocational expert testified.

The ALJ issued an unfavorable decision to Mr. Masterson on March 3, 2020. The ALJ concluded that:

> 1. Mr. Masterson met the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. Mr. Masterson hadn't engaged in substantial gainful activity since March 22, 2018, the alleged onset date. 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*
>
> 3. Mr. Masterson had the following severe impairments: lumbar degenerative disc disease with spondylosis and spondylolisthesis. 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 4. Mr. Masterson didn't have impairments that were severe enough, either singularly or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.
>
> 5. Mr. Masterson has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 4 hours in an 8-hour work period, and sit for up to 6 hours in a 4-hour work period. The work should allow Mr. Masterson the opportunity to change position from sitting to standing (and vice versa) every 30 minutes. Mr. Masterson can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl but he can never climb ladders, ropes, or scaffolds. Due to left visual abnormalities, Mr. Masterson must avoid concentrated exposure workplace hazards, such as unprotected heights and/or dangerous moving machinery, and all operation of a motorized vehicle.
>
> 6. Mr. Masterson was unable to perform any past relevant work. 20 C.F.R. §§ 404.1565, 416.965.
>
> 7. Mr. Masterson was a younger individual (43 years old) at the alleged onset date. 20 C.F.R. §§ 404.1563, 416.963.
>
> 8. Mr. Masterson has at least a high school education and can communicate in English. 20 C.F.R. §§ 404.1564, 416.964.

9.  Transferability of job skills isn't an issue because the Medical-Vocational Rules support a finding that Mr. Masterson isn't disabled whether or not he has transferable job skills.

10. Considering Mr. Masterson's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Masterson can perform. The ALJ indicated that he considered the vocational expert's testimony that Mr. Masterson would be able to perform the requirements of occupations such as: hand packer (185,000 job nationally), assembler (179,500 job nationally), and information clerk (162,500 positions nationally). The national job numbers reflected a 50% reduction that the vocational expert testified would result from the sit/stand option from the residual functional capacity.

The ALJ concluded that Mr. Masterson wasn't entitled to disability benefits because he wasn't disabled within the meaning of the Social Security Act. When the Appeals Council denied his request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II.  STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). A reviewing court doesn't decide whether a claimant is disabled, but evaluates whether substantial evidence supports the ALJ's decision that a claimant wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S.

389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted). While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

### III. DISCUSSION

Mr. Masterson argues that the ALJ's decision unsupported because the ALJ (1) improperly dismissed Dr. Gupta's opinion, (2) created a residual functional capacity that wasn't adequately supported or explained, that was mathematically impossible, and that was inconsistent with hypotheticals posed to the vocational expert, and (3) improperly assessed Mr. Masterson's subjective symptoms.

Mr. Masterson first argues that the ALJ wrongly dismissed Dr. Gupta's opinion that Mr. Masterson was "unable to do work related activities such as

4

prolonged sitting, standing and walking due to lower back and bilateral hip pain." Dr. Gupta made this observation after examining Mr. Masterson in October 2018. Dr. Gupta noted that Mr. Masterson had "spinous and paraspinal tenderness in the lumbar region[, and] restricted range of motion in the lumbar." His other observations were entirely normal, yet he opined that Mr. Masterson couldn't do various work-related activities. The ALJ reasoned that because there was little objective basis for Dr. Gupta's recommended limitations, the recommendation must have been based on the "uncritical acceptance of [Mr. Masterson]'s subjective claim pains," and he was "unpersuaded" of Dr. Gupta's recommended limitations.

Mr. Masterson argues that the ALJ improperly dismissed Dr. Gupta's limitations because there was some objective evidence of range of motion loss to Mr. Masterson's lumbar spine and because Dr. Gupta could have based his limitations not only on objective evidence, but also on Mr. Masterson's chronic pain. He suggests the ALJ improperly gave his own medical opinion by concluding that the limitations were based on Mr. Masterson's subjective claims.

The Commissioner responds that the ALJ properly dismissed Dr. Gupta's limitations because even if there was some objective evidence, it didn't support such an extreme limitation. The ALJ reasonably concluded that Dr. Gupta based the limitations on Mr. Masterson's subjective pain complaints because of the mismatch between the scant objective evidence and extreme limitations. The Commissioner adds that the ALJ extensively discussed other record evidence that didn't support Dr. Gupta's evaluation, bolstering the ALJ's conclusion.

ALJs generally defer to medical judgments, but an ALJ may properly discount a medical opinion if it's based on the claimant's subjective complaints rather than objective evidence. Ghiselli v. Colvin, 837 F.3d 772, 776 (7th Cir. 2016). The ALJ didn't "play doctor" by reasoning that certain normal findings negated Dr. Gupta's recommendation. Instead, the ALJ reasonably concluded that Dr. Gupta's recommendation must have been based on Mr. Masterson's subjective symptoms because of the asymmetry between the objective evidence and the recommended limitations. See Loveless v. Colvin, 810 F.3d 502, 507 (7th Cir. 2016); Ketelboeter v. Astrue, 550 F.3d 620, 625 (7th Cir. 2008) (ALJ can discount opinion when "based almost entirely on [claimant's] subjective complaints rather than objective evidence."). The ALJ was permitted to conclude that Dr. Gupta's opinion was based on subjective complaints, so remand isn't warranted on this issue.

Mr. Masterson next argues the residual functional capacity is unsupported. The residual functional capacity limited the time Mr. Masterson could sit, stand, and walk during a workday and required that he be able to switch between sitting and standing every thirty minutes. Mr. Masterson argues that this is unsupported because the ALJ neither cites evidence to support these limitations nor explains why these limitations are appropriate. See Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011). He suggests that Dr. Gupta's opinion might have supported these had the ALJ not rejected Dr. Gupta's opinion.

The Commissioner responds by arguing that crafting the residual functional capacity is the ALJ's responsibility, not a doctor's responsibility. See

6

20 C.F.R. §§ 404.1545(c), 416.946(c); Thomas v. Colvin, 745 F.3d 802, 808 (7th Cir. 2014). At oral argument, counsel for the Commissioner explained the limitation was based on Mr. Masterson's hearing testimony about having to switch between standing and sitting every twenty minutes or so because of his hip and back pain. Counsel further explained that even though the ALJ didn't find Mr. Masterson's self-reported limitations to be persuasive, the ALJ included some limitations to give Mr. Masterson the benefit of the doubt.

The Commissioner's argument about the ALJ's responsibility for the residual functional capacity as compared to the role of medical experts doesn't address Mr. Masterson's argument that the residual functional capacity was neither based on evidence nor sufficiently explained. Mr. Masterson's argument is about the ALJ's obligation to explain which evidence supports the residual functional capacity and to explain how that evidence supports the determination, not about who crafts the residual functional capacity. See Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011). As for the substance of Mr. Masterson's argument, the ALJ's opinion doesn't make it entirely clear that these limitations come from Mr. Masterson's hearing testimony and the ALJ's opinion doesn't explain how he arrived at the limitations. Mr. Masterson testified that he had to move around every fifteen to twenty minutes to deal with his hip and back pain. The ALJ doesn't explain how that translates to changing position every thirty minutes and it's unclear that the vocational expert's testimony would've been the same if the hypotheticals supposed changing position every fifteen to twenty minutes instead of every thirty minutes. The ALJ might have had good reason to craft the

residual functional capacity as he did, but he didn't provide the explanation that's required. Without that explanation, the court can't trace the path of the ALJ's reasoning. Scott v. Barnhart, 297 F.3d 859, 595 (7th Cir. 2002). Remand is appropriate so the ALJ can explain exactly how he determined these limitations.

## IV.  CONCLUSION

Based on the foregoing analysis, the court concludes that the ALJ erred by not explaining how the evidence supported the residual functional capacity's limitations related to sitting, standing, walking, and changing positions, which created an unsupported residual functional capacity. The Commissioner's decision is therefore REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: February 15, 2022

/s/ Robert L. Miller, Jr.
Judge, United States District Court